JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
JACK A. REITMAN (State Bar No. 283746)
jareitman@landaufirm.com
LANDAU LAW LLP
1880 Century Park East, Suite 1101
Los Angeles, California 90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>              Debtor. | Case No.: 8:19-bk-13560-CB<br><br>Chapter 7<br><br>Adv. No.: 8:20-ap-01049-CB |
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br>              Plaintiff,<br><br>    v.<br><br>ALEDMI, LLC, an administratively dissolved Washington limited liability company; ALAN CHAFFEE, as successor in interest to ALEDMI, LLC; EDWIN SPAUNHURST, as successor in interest to ALEDMI, LLC; MICHAEL WHITE, as successor in interest to ALEDMI, LLC;<br><br>              Defendants. | **SECOND AMENDED COMPLAINT FOR AVOIDANCE AND RECOVERY OF VOIDABLE TRANSFERS** |

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Plaintiff is Richard A. Marshack, chapter 7 trustee ("Trustee") for the bankruptcy estate

2  ("Estate") of Eagan Avenatti, LLP ("EA").  As the Trustee was not appointed until after EA filed

3  bankruptcy on September 13, 2019 (the "Petition Date"), the Trustee does not have personal

4  knowledge of the facts alleged below and therefore alleges those facts based upon the following:

5  EA's bank records, information in the public record concerning EA, Michael J. Avenatti

6  ("Avenatti") and his other related entities, information in the public record concerning defendants,

7  information obtained from other proceedings in which EA, Avenatti or his other related entities

8  were involved and information obtained from former clients of EA.

9                              **JURISDICTION AND VENUE**

10    1.   In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Santa Ana

11  Division of the United States Bankruptcy Court for the Central District of California ("Bankruptcy

12  Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334, because the

13  claims asserted arise under Title 11 of the United States Code or arise in or relate to the Chapter 7

14  case of the debtor, EA, currently pending in the Bankruptcy Court as Case No. 8:19-bk-13560-CB

15  ("EA Bankruptcy Case").  The outcome of this adversary proceeding will have a significant effect

16  on the Estate because it asserts claims for the return of property or the recovery of the value of

17  assets fraudulently transferred by EA at the direction of its managing partner and affects the

18  amount of money available for distribution to creditors of the Estate.  The claims for relief in this

19  Complaint constitute a core proceeding under 28 U.S.C. § 157(b)(2)(H).  Regardless of whether

20  this is a core proceeding, consent is given to the entry of final orders and judgment by the

21  Bankruptcy Court.  The defendants are notified that Fed. R. Bankr. P. 7012(b) requires each

22  defendant to state whether such defendant does or does not consent to the entry of final orders and

23  judgment by the Bankruptcy Court.

24    2.   Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409

25  because the EA Bankruptcy Case is pending in this district and division.  This Court also has

26  personal jurisdiction over defendant.

27                              **PARTIES**

28    3.   Plaintiff, Richard A. Marshack, is the chapter 7 trustee of the EA Estate.

Landau Law LLP
Attorneys at Law
Los Angeles, California

2

4.    Defendant Aledmi, LLC ("Aledmi") is an administratively dissolved Washington limited liability company with a former principle place of business in Seattle, Washington. No certificate of dissolution has been filed by Aledmi with the Washington Secretary of State.

5.    Defendant Alan Chaffee ("Chaffee") is a member of Aledmi and currently resides in Seattle, Washington.

6.    Defendant Edwin Spaunhurst ("Spaunhurst") is a member of Aledmi and currently resides in Mercer Island, Washington.

7.    Defendant Michael White ("White") is a member of Aledmi and currently resides in Seattle, Washington (Aledmi, Chaffee, Spaunhurst, and White are collectively referred to as the "Aledmi Parties").[1]

## GENERAL ALLEGATIONS

8.    EA was a California based litigation law firm formed in the mid-2000s. At any given time, EA employed between seven to nine attorneys, and primarily handled plaintiff contingency matters, whereby the firm only received legal fees after a case was resolved in favor of EA's client.

9.    In 2011, Avenatti assumed control over the management of EA. From at least January 1, 2012, and at all relevant times thereafter, Avenatti was the managing partner of EA and owned at least 75% of the firm directly or indirectly through his personal corporation, Avenatti & Associates, APC ("A&A"). As EA's managing partner, Avenatti at all relevant times was an individual who controlled EA's business and had full access to its business and financial records (including its banking records).

10.    Avenatti is an attorney of national notoriety, including previously having acted through EA as class-counsel in cases such as *Bahamas Surgery Center, LLC v. Kimberly-Clark*

---

[1] Pursuant to RCW 25.15.265 *et seq.* and controlling case law (*see e.g. Chadwick Farms Owners Ass'n v. FHC, LLC*, 166 Wash. 2d 178, 186 (2009)), because Aledmi was administratively dissolved on December 1, 2016 and no Certificate of Dissolution was or has been filed with the Washington Secretary of State, Aledmi remains able to sue or be sued, and its members (Chaffee, Spaunhurst, and White) are personally liable for its debts due to their failure to properly wind up the affairs of Aledmi. RCW 25.15.305; *Chadwick Farms*, 166 Wash. 2d at 201 ("It follows that, as the Court of Appeals determined in *Emily Lane*, personal liability to claimants may result if the persons winding up the company's affairs do not comply with RCW [25.15.305].")

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Corporation, et al.* (involving defective surgical gowns) and *Greco v. NFL* (a series of consolidated lawsuits relating to Super Bowl XLV in Dallas, Texas) and representing high profile clients such as Stephanie Clifford (also known as "Stormy Daniels") and the alleged victims of R&B artist R. Kelly.

11.    EA received substantial revenue from its operations but also incurred substantial liabilities.  For example, in June 2011, EA was sued by its former co-counsel in a case, Stoll, Nussbaum & Polakov APC ("Stoll").  Stoll alleged that, in the case where EA and Stoll had been co-counsel, EA had received the entire settlement payment of $39 million from the defendants and had paid itself, another law firm, and the clients, but had wrongfully retained $5,465,314 to which Stoll was allegedly entitled under a fee-sharing agreement.  At all times between June 2011 and the Petition Date, Stoll was seeking payment from EA of the $5,465,314 in fees and costs allegedly owed under the fee-sharing agreement, plus punitive damages, interest, etc.

12.    In 2012, EA began to default on its tax obligations.  For example, EA failed to file its partnership tax returns for 2011 and 2012 with the Internal Revenue Service ("IRS") until March and October of 2014, respectively.  EA simply never filed partnership tax returns with the IRS for tax years 2013 onwards.  EA also failed to pay its annual limited partnership fee to the California Franchise Tax Board (the "FTB") for 2011 and for every year from 2013 onwards.

13.    At the same time that EA was defaulting on its tax obligations and allegedly in possession of more than $5 million in stolen money, Avenatti caused EA to disburse a substantial amount of EA funds (either directly or through A&A or another of Avenatti's companies) to fuel Avenatti's personal expenses and support his opulent lifestyle, for example: (i) Avenatti's acquisition of a coffee company, owner of the "Tully's" coffee chain, which Avenatti operated through a company owned by him called Global Baristas US LLC ("Global Baristas"); (ii) Porsche GT3 and Mercedes-AMG GT3 auto racing through another company owned by him GB Autosport, LLC and other entities which owned, maintained and operated Porsche and Mercedes race cars for Avenatti's personal use in the United States and Europe;[2] (iii) a Ferrari for Avenatti's

Landau Law LLP
Attorneys at Law
Los Angeles, California

---

[2] EA also purchased a Porsche GT3 race car on Avenatti's behalf.

1  personal use (at approximately $4,000 a month); (iv) Avenatti's acquisition of an indirect

2  ownership interest in a private jet through Passport 420, LLC; (v) shopping sprees at Neiman

3  Marcus and other luxury retail stores (court records document American Express charges between

4  $60,000 and $70,000 a month); (vi) an ocean front residence in Laguna Beach, California

5  purchased for $7.2 million in 2011 and sold for $12.6 million in 2015; (vii) lavish trips to Mexico,

6  Paris, and the French Riviera; (viii) making deposit and rent payments under an agreement to

7  purchase a home on Lido Isle in Newport Beach, California for $15.75 million (which purchase

8  never closed); and (ix) making substantial improvements to both the Laguna Beach house and the

9  Lido Isle house.

10      14.    Given that EA was expending exorbitant amounts, directly or indirectly, to support

11  Avenatti's opulent lifestyle and that EA received no benefit from the expenditures, it is

12  unsurprising that EA ended up in financial difficulties.  Those difficulties manifested both in

13  nonpayment of additional debts and in EA seeking to obtain loans to fund its operations.

14      15.    On February 15, 2014, EA failed to pay the annual profit bonus due to Jason Frank

15  Law, PLC ("JFL") for 2013 under an independent contractor agreement between EA and JFL.  EA

16  subsequently failed to pay substantial additional amounts to JFL under the same agreement,

17  leading to JFL eventually obtaining a $10 million judgment for amounts EA failed to pay JFL

18  from 2014 through 2016.

19      16.    At or around the same time that EA failed to pay the 2013 bonus to JFL, Avenatti

20  was seeking a loan for EA from The Peoples Bank, a bank located in Mississippi.  Avenatti stated

21  that the loan was primarily for "working capital" for EA.  Avenatti submitted fraudulent

22  documents to the bank in order to obtain the loan, including a balance sheet that overstated EA's

23  bank account balance by approximately $450,000, and a fake partnership tax return that overstated

24  EA's 2012 income by approximately $8 million.  Even with the rosier picture of EA's finances

25  painted by the false documents, the bank required collateral pledges and a personal guaranty to

26  make a short-term loan of $2.75 million to EA.  The first Peoples Bank loan was issued on March

27  14, 2014 and had a maturity date of June 15, 2014.

28      17.    The first Peoples Bank loan was repaid from the proceeds of a settlement achieved

Landau Law LLP
Attorneys at Law
Los Angeles, California

1   by EA on behalf of a client in May 2014.  Just six months later, in November 2014, Avenatti was

2   again seeking a substantial loan from The Peoples Bank for EA's "case costs and working

3   capital."  Avenatti requested a $2.5 million line of credit, and again submitted fraudulent

4   documents to the bank in support of the request, including a balance sheet that overstated EA's

5   bank account balance by approximately $700,000.  However, again, even with the falsely

6   optimistic picture of EA's finances, the bank required guaranties and pledges to secure the loan,

7   and ultimately approved only a $500,000 one-year term loan, rather than the $2.5 million line of

8   credit requested by Avenatti.

9       18.    The second Peoples Bank loan was issued on December 12, 2014.  The loan was

10  secured by an assignment of the first $500,000 in attorneys' fees EA was due to receive from a

11  specific case.  EA received those fees in or around February 2015 but did not pay any portion of

12  the fees towards the Peoples Bank loan.  Nor did EA repay the loan by its maturity date of

13  December 12, 2015.  It was only after the bank repeatedly demanded payment from Avenatti and

14  threatened to send the loan to collections, that EA finally repaid the second Peoples Bank loan,

15  approximately four months later.

16      19.    As set forth above, by the beginning of 2015, EA had already defaulted on multiple

17  tax obligations, was subject to a more than $5 million claim asserted by Stoll, was failing to pay

18  substantial amounts owed to JFL, and had fraudulently obtained multiple loans to finance its

19  operating costs.  EA's inability to keep its "head above water" financially resulted in ever more

20  desperate measures in 2015.  In the first quarter of 2015, EA stopped paying payroll taxes to the

21  IRS.  Between 2015 and 2017, EA accrued approximately $2.4 million in unpaid payroll taxes –

22  including approximately $1.3 million in trust fund taxes that EA had withheld from employees'

23  checks but never sent to the IRS.  EA also stopped paying taxes to the California Employment

24  Development Department ("EDD") in the first quarter of 2015.  At the same time, EA stopped

25  paying multiple trade creditors (e.g., providers of professional services associated with EA's law

26  practice).

27      20.    By September 13, 2015, EA was generally not paying its debts as they became due.

28  Several of the creditors who were not being paid have held unsecured claims against EA

6

Landau Law LLP
Attorneys at Law
Los Angeles, California

1  continuously from at least September 13, 2015, through the Petition Date, including but not

2  limited to the IRS; the FTB; the EDD; and Baker, Keener & Nahra, LLP.  These creditors hold

3  claims that are allowable in the EA Bankruptcy Case under 11 U.S.C. § 502.

4          21.     The avoidable transfers that are alleged in this Complaint could not reasonably

5  have been discovered by these creditors or EA's other creditors until less than one year before the

6  Petition Date.  The transfers at issue are payments of money between private parties, so there is no

7  public record of those transfers from which a creditor could have learned of their existence.

8  Instead, a creditor would have to acquire access to EA's bank statements and other financial

9  records to learn of the transfers at issue and their fraudulent nature.  Given Avenatti's willingness

10  to falsify EA financial documents (as described above in connection with the Peoples Bank loans

11  and as described below in connection with the first EA bankruptcy case) and his extreme

12  resistance to producing accurate EA financial documents (as described below in connection with

13  the JFL arbitration and the receivership proceeding), the creditors holding unsecured claims had

14  no reasonable ability to obtain the accurate financial records of EA necessary to discover the

15  transfers at issue and their fraudulent nature.

16          22.     In 2016, JFL filed an arbitration claim against EA for amounts owed under the

17  agreement between JFL and EA.  Since some of the amounts payable to JFL were based on the

18  amount of EA's revenue, the agreement entitled JFL to receive various EA financial documents

19  for the period from 2013 onwards.  JFL had been informally seeking those documents from

20  Avenatti for years without success.  It wasn't until JFL filed the arbitration proceedings and EA

21  was ordered by the arbitration panel to produce financial records that EA produced any such

22  records to JFL.  Even then, EA refused to provide complete documentation (for example, although

23  redaction was not permitted, EA redacted numerous entries on the bank statements that it

24  provided).  Ultimately, EA's persistent refusal to comply with discovery orders caused the

25  arbitration panel to impose heavy sanctions on EA.

26          23.     In February 2017, the arbitration panel ordered Avenatti and two other individuals

27  knowledgeable about EA's finances to appear for depositions on or before March 3, 2017.  The

28  order made clear that the panel would consider the imposition of severe sanctions (including

1  $10,000 sanctions against each individual personally) if Avenatti and the other individuals failed

2  to comply with the order.  Rather than appearing to give testimony regarding EA's finances,

3  Avenatti orchestrated the filing of an involuntary bankruptcy case against EA in the Middle

4  District of Florida on March 1, 2017, to stay the arbitration proceedings.

5      24.    Avenatti consented to EA being placed into Chapter 11 bankruptcy on March 10,

6  2017, and the case was subsequently transferred to the Honorable Catherine E. Bauer in the

7  Central District of California on May 16, 2017 (*In re Eagan Avenatti, LLP*, Case No. 8:17-bk-

8  11961-CB) ("2017 Bankruptcy").

9      25.    EA's Schedules of Assets and Liabilities filed in the 2017 Bankruptcy listed

10  approximately $19 million of unsecured debts owed by EA to approximately 33 different creditors

11  – without including any amounts owed to Stoll or JFL, or the millions that Avenatti had stolen

12  from EA clients.

13      26.    The 2017 Bankruptcy was dismissed on March 15, 2018, as part of a structured

14  settlement approved by the bankruptcy court.  That structured settlement required EA, following

15  the dismissal of the bankruptcy, to pay certain debts it owed to creditors, including the IRS, JFL,

16  and various other creditors.  Avenatti caused EA to misappropriate client funds to make the initial

17  payment due under the settlement.  Specifically, on March 14, 2018, EA received on behalf of one

18  of its clients a settlement payment of approximately $8 million.  Rather than paying the entire

19  amount to the client, as it was obligated to do, Avenatti caused EA to transfer $2,828,423 of the

20  client funds to the law firm representing Avenatti in the 2017 Bankruptcy.  The law firm then

21  distributed these funds to (1) the IRS, as the initial payment towards its claim against EA, (2) EA's

22  counsel in the 2017 Bankruptcy, and (3) counsel for the Official Committee of Unsecured

23  Creditors in the 2017 Bankruptcy.

24      27.    EA did not make any of the other payments owed under the settlement, except for a

25  payment of $75,000 to the IRS.  As a result of EA failing to make any payments to JFL, the

26  bankruptcy court entered a judgment in favor of JFL and against EA in the amount of $10 million

27  on May 22, 2018.

28      28.    JFL's judgment against EA was registered before the United States District Court

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  for the Central District of California on August 31, 2018 and was assigned to Chief Judge Virginia

2  A. Phillips [*In re Eagan Avenatti*, 8:18-cv-01644-VAP-KES].

3        29.     As part of the district court proceeding, JFL moved for the appointment of an

4  independent receiver for the assets of EA.  Avenatti stipulated to the appointment of Brian Weiss

5  as the Receiver for EA.  Pursuant to that stipulation, on February 13, 2019, the District Court

6  entered a Receivership and Restraining Order against EA and Avenatti.

7        30.     Throughout the Receivership, Avenatti attempted to impede the Receiver in

8  recovering EA financial documents, first stating that he would turn over such documents, and then

9  later stating that he did not know where they were.  In or about April of 2019, it was discovered

10  that Avenatti had caused EA's computer servers containing EA's books and records and other

11  financial data to be moved to an off-site storage facility but refused to disclose this information to

12  the Receiver for months.  Eventually, when the Receiver located these servers they were turned

13  over to the U.S. Government in connection with criminal charges against Avenatti.  Once the

14  Receiver (and then later the Trustee) recovered the servers and forensic copies of the data

15  contained therein, it was not possible to access the data due to the significant cost in doing so, and

16  the fact that EA had only nominal available funds (the remainder had been "removed" by

17  Avenatti).

18        31.     On March 22, 2019, the United States Attorney for the Central District of

19  California filed a criminal complaint against Avenatti, initiating the criminal case known as *U.S. v.*

20  *Avenatti*, United States District Court for the Central District of California, SACR19-00061-JVS

21  ("California Criminal Case").[3]  The complaint in the California Criminal Case charged Avenatti

22  with wire fraud for wrongfully diverting to his personal use millions of dollars belonging to EA's

23  clients, willfully causing EA to not pay approximately $2.4 million in payroll taxes to the IRS,

24  including $1,279,001 in trust fund taxes that had been withheld from EA employees' paychecks,

25

26  [3] This case is defined as the "California Criminal Case" to differentiate it from the two separate criminal cases
pending against Avenatti in New York.  On February 14, 2020, a jury in the Southern District of New York found

27  Avenatti guilty of transmission of interstate communications with intent to extort (18 U.S.C. § 875(d)); attempted
extortion (18 U.S.C. § 1951); and honest services wire fraud (18 U.S.C. § 1342, 1346) in *United States v. Avenatti*,

28  No. 1:19-CR-373-PGG.  These charges are in connection with Avenatti's attempted extortion of Nike, Inc. for over
$20 million.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  causing EA to not file tax returns for the 2013 through 2017 tax years, bankruptcy crimes, bank

2  fraud and other crimes.  On April 4, 2019, the Grand Jury in the California Criminal Case indicted

3  Avenatti on 36 counts for, *inter alia*, wire fraud, tax evasion, tax fraud, bank fraud, aggravated

4  identity theft, bankruptcy crimes, perjury, and the theft of millions of dollars from EA's former

5  clients.

6        32.      On September 13, 2019, Brian Weiss, as the Receiver for EA, filed a voluntary

7  petition under Chapter 7 of Title 11 initiating this bankruptcy case.

8  **_Transfers made by EA to the Aledmi Parties_**

9        33.      Between June 13 and June 24, 2014, Avenatti caused EA to make $2,202,957.30 in

10  transfers to the Aledmi Parties for his personal benefit ("EA Transfers").  Ten days after Global

11  Baristas purchased Tully's Coffee (purchase date on or about July 1, 2013), Avenatti obtained a

12  loan from Aledmi in the approximate amount of $2,150,000 to fund Tully's/Global Baristas' daily

13  operations, pledging Tully's newly acquired assets as collateral (on or about July 10, 2013).

14  Aledmi was formed two days prior to the agreement (July 8, 2013) solely for this purpose and no

15  others. The EA Transfers were made to repay this loan made to Global Baristas.  EA (and its

16  creditors) received no value in exchange for the EA Transfers to the Aledmi Parties.  Tully's

17  Coffee was owned entirely by Global Baristas, an entity owned and controlled by Avenatti; EA

18  had no ownership interest in Tully's Coffee or Global Baristas and was not liable to Aledmi for

19  the loan it made to Global Baristas.  A spreadsheet cataloging the EA Transfers along with

20  cancelled checks and/or bank statements evidencing the EA Transfers are attached as **Exhibit 1**.

21  **FIRST CLAIM FOR RELIEF**

22  **(Against Defendants, To Avoid 7-Year Transfers under 11 U.S.C. §§ 544(a), (b) and**

23  **Cal. Civ. Code §§ 3439.04(a), 3439.07, and 3439.09(a), (c))**

24        34.      The Trustee incorporates by reference and realleges paragraphs 1-33 of this

25  Complaint.

26        35.      During the seven-year period immediately preceding the Petition Date, Avenatti

27  directed and caused EA to make transfers of its property, including money, to or for the benefit of

28  defendants, as listed in **Exhibit 1**.  Those transfers are referred to herein as the "7-Year Transfers."

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

36.     The 7-Year Transfers were made by EA with the actual intent to hinder, delay, or defraud its creditors. Specifically, Avenatti caused EA to make these transfers to or for the benefit of defendants to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA, even though Avenatti knew that EA was subject to substantial creditor claims and the transfers reduced the amount of funds available to pay these creditors, and knew or consciously or recklessly chose to ignore facts known to him that strongly suggested that EA was in default on multiple obligations. Specifically, at all times during the seven-year period, Stoll was asserting a claim of more than $5 million against EA based on EA's alleged theft of money owed to Stoll; EA owed money to the California Franchise Tax Board; and EA was late in filing IRS returns, not filing IRS returns, and/or failing to pay its tax obligations to the IRS. As described above, during the seven-year period, EA defaulted on numerous other obligations, accrued millions of dollars of unsecured debt, wrongfully withheld more than a million dollars in trust fund taxes EA collected from its employees but failed to remit to the IRS, and ultimately misappropriated millions of dollars of client funds to pay a small portion of its accrued debts.

37.     Defendants did not take any of the 7-Year Transfers in good faith/EA did not receive reasonably equivalent value in exchange for the 7-Year Transfers. Specifically, defendants (i) knew or consciously or recklessly chose to ignore facts known to them that strongly suggested that the transfers were of property or money belonging to EA because the transfers were identified as emanating from that entity; (ii) knew or consciously or recklessly chose to ignore facts known to them that strongly suggested that the value, if any, that defendants provided in exchange for those payments was not for the benefit of and did not benefit EA or its creditors, and that such value, if any, conferred no or less than reasonably equivalent value upon EA or its creditors.

38.     At all relevant times, the 7-Year Transfers were voidable under California Civil Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against EA that are allowable against its Estate under 11 U.S.C. § 502. These creditors include, without limitation, the IRS, the FTB, the EDD, and Baker, Keener & Nahra, LLP.

39.     For the reasons described above, the voidable transfers alleged in this claim for

1  relief could not reasonably have been discovered by these creditors sooner than one year prior to

2  the Petition Date.

3  **SECOND CLAIM FOR RELIEF**

4  **(Against Defendants, To Avoid 8-Year Transfers under 11 U.S.C. §§ 544(a), (b) and**

5  **Cal. Civ. Code §§ 3439.04(a) and 3439.07)**

6  40.    The Trustee incorporates by reference and realleges paragraphs 1-33 of this

7  Complaint.

8  41.    During the eight-year period immediately preceding the Petition Date, Avenatti

9  directed and caused EA to make transfers of its property, including money, to or for the benefit of

10  defendants, as listed in **Exhibit 1**.  Those transfers are referred to as the "8-Year Transfers."

11  42.    The 8-Year Transfers were made by EA with the actual intent to hinder, delay, or

12  defraud its creditors.  Specifically, Avenatti caused EA to make these transfers to or for the benefit

13  of defendant to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA,

14  even though Avenatti knew that EA was subject to substantial creditor claims and the transfers

15  reduced the amount of funds available to pay these creditors, and knew or consciously or

16  recklessly chose to ignore facts known to him that strongly suggested that EA was in default on

17  multiple obligations.  Specifically, at all times between January 1, 2012, and the Petition Date,

18  Stoll was asserting a claim of more than $5 million against EA based on EA's alleged theft of

19  money owed to Stoll; EA owed money to the California Franchise Tax Board; and EA was late in

20  filing IRS returns, not filing IRS returns, and/or failing to pay its tax obligations to the IRS.  As

21  described above, during that eight-year period, EA defaulted on numerous other obligations,

22  accrued millions of dollars of unsecured debt, wrongfully withheld more than a million dollars in

23  trust fund taxes EA collected from its employees but failed to remit to the IRS, and ultimately

24  misappropriated millions of dollars of client funds to pay a small portion of its accrued debts.

25  43.    Defendants did not take any of the 8-Year Transfers for a reasonably equivalent

26  value and/or did not take such transfers in good faith.  Specifically, defendants (i) knew or

27  consciously or recklessly chose to ignore facts known to them that strongly suggested that the

28  transfers were of property or money belonging to EA because the transfers were identified as

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

emanating from that entity; (ii) knew or consciously or recklessly chose to ignore facts known to them that strongly suggested that the value, if any, that defendants provided in exchange for those payments was not for the benefit of and did not benefit EA or its creditors, and that such value, if any, conferred no or less than reasonably equivalent value upon EA or its creditors.

44.    At all relevant times, the 8-Year Transfers were voidable under California Civil Code §§ 3439.04(a) and 3439.07 by the IRS.  The IRS holds a substantial unsecured claim against EA that is allowable against its Estate under 11 U.S.C. § 502, and a significant portion of any funds the Trustee recovers on behalf of the Estate will be paid to the IRS on account of its claim. Pursuant to federal jurisprudence, state statutes of repose like those set forth in California Civil Code § 3439.09 are inapplicable to the IRS, and those statutes of repose are likewise inapplicable to the Trustee when standing in the position of the IRS pursuant to 11 U.S.C. § 544(b).  Therefore, under applicable non-bankruptcy law, the Trustee may reach back to January 1, 2012, to avoid and recover the 8-Year Transfers on behalf of the IRS and other creditors of the Estate.

## THIRD CLAIM FOR RELIEF

### (Against Defendants, To Recover and Preserve Avoided Transfers
### under 11 U.S.C. § 550(a)(1), (a)(2), and § 551)

45.    The Trustee incorporates by reference and realleges paragraphs 1-33, 35-39 and 41-44 of this Complaint.

46.    To the extent that defendants are initial transferees of the transfers referred to in this Complaint and such transfers are avoided, defendants are strictly liable for their return and the Trustee is entitled to recover judgments in such amounts.

47.    To the extent that defendants are not initial transferees of the transfers referred to in this Complaint, defendants (i) are subsequent transferees of the initial transferee of such payments, and (ii) did not take such transfers for value and/or in good faith and/or without knowledge of the voidability of such transfers.  Each of the transfers referred to in this claim for relief is recoverable from defendants as subsequent transferees of the transfers that Avenatti directed and caused EA to make to the initial transferees.

48.    Under 11 U.S.C. § 551, any transfer avoided is automatically preserved for the

1    benefit of the Estate.

2        **WHEREFORE,** the Trustee, on behalf of the Estate, prays for judgment against defendant

3    as follows:

4        1.    On the First Claim for Relief, for a judgment against defendants that avoids the 7-

5    Year Transfers;

6        2.    On the Second Claim for Relief, for a judgment against defendants that avoids the

7    8-Year Transfers;

8        3.    On the Third Claim for Relief, for a judgment against defendants that awards

9    damages in an amount equal to the value of the transfers avoided under the First and Second

10    Claims for Relief and/or that preserves the avoided transfers for the benefit of the Estate;

11        4.    For pre- and post-judgment interest at the applicable legal rate on all damages and

12    sums awarded to the Trustee; and

13        5.    For such other relief as the Court deems just and proper.

14

15    Dated: July 21, 2020                    LANDAU LAW LLP

16                                    By ____/s/ Jack A. Reitman_____
                                            Jack A. Reitman
17                                    Special Litigation Attorneys for
                                    Plaintiff Richard A. Marshack,
18                                    Chapter 7 Trustee for Eagan Avenatti, LLP

19

20

21

22

23

24

25

26

27

28

Landau Law LLP
Attorneys at Law
Los Angeles, California

EXHIBIT 1

| Date | Amount | Transaction Kind | Check # | Description | Category1 | Bank Name | Account Number | Account Type | Account Name | Account Entity |
|------|--------|------------------|---------|-------------|-----------|-----------|----------------|--------------|--------------|----------------|
| 6/24/2014 | (52,957.30) | Wire | | WIRE/OUT-2014062400002774;BNF ALEDMI LLC 1302400814 | Aledmi LLC | CBT | 3260138461 | Checking | EA CBT 8461 Operating | Eagan Avenatti Checking |
| 6/13/2014 | (2,150,000.00) | Wire | | WIRE/OUT-2014061300004116;BNF ALEDMI LLC 1302002456 | Aledmi LLC | CBT | 3260138461 | Checking | EA CBT 8461 Operating | Eagan Avenatti Checking |

Total Out:    (2,202,957.30)

EXHIBIT 1
15

## CALIFORNIA BANK & TRUST

P.O. Box 489, Lawndale, CA 90260-0489

**Statement of Accounts**
Page 1 of 18
This Statement: June 30, 2014
Last Statement: May 30, 2014

Account 3260138461

**DIRECT INQUIRIES TO:**
Customer Service  1 (800) 400-6080

0053773    4182-06-1000-CBT-PC0023-00131

EAGAN AVENATTI LLP
OPERATING ACCOUNT
450 NEWPORT CENTER DR FL 2
NEWPORT BEACH CA 92660-7610

Irvine Branch
1900 Main St.   Suite 100
Irvine, CA 92614-0000
(949) 223-7500

---

California Bank & Trust, as a part of Zions Bancorporation, has received 12 Greenwich Excellence Awards for business banking. The awards include the national award for overall satisfaction in small business banking and the national award for overall satisfaction in middle market banking.

NO PAPERWORK. MORE CONVENIENCE.
Online banking from your computer, smartphone, or tablet.
Quick secure access. Learn more at calbanktrust.com.

---

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
|---|---|---|---|
| Business Advantage Checking | 3260138461 | $40,161.87 | |

## BUSINESS ADVANTAGE CHECKING 3260138461    105   131

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
|---|---|---|---|---|
| 1,504,540.54 | 5,881,278.67 | 5,810,149.67 | 1,535,507.67 | 40,161.87 |

### 9 DEPOSITS/CREDITS

| Date | Amount | Description |
|---|---|---|
| 06/02 | 1,500,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000007913  2305405494 |
| 06/02 | 44,284.44 | AT&T PAYMENTS O053030909676SSREF # 014153000374859  1105328704 |
| 06/02 | 27,411.42 | REMOTE DEPOSIT 5353097622 |
| 06/09 | 7,828.45 | REMOTE DEPOSIT 5353099019 |
| 06/13 | 3,000,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000006847  2305101226 |
| 06/18 | 200,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000001692  2304401462 |
| 06/26 | 900,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000006446  2304000504 |
| 06/30 | 200,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000007612  2304400166 |
| 06/30 | 1,754.36 | REMOTE DEPOSIT 5353089160 |

### 49 CHARGES/DEBITS

| Date | Amount | Description |
|---|---|---|
| 06/02 | 525,000.00 | WIRE/OUT-2014060200003678;BNF HONDA AIRCRAFT COMPANY LLC  1301800997 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 221,112.01 | WIRE/OUT-2014060200003728;BNF EDWARD M. RICCI  1301801007 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 979,870.10 | WIRE/OUT-2014060200003755;BNF EDWARD M. RICCI  1301801015 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 19.95 | Intuit Acct Fee INTUIT# REF # 014153000426436  1105331719 |
| 06/02 | 2,735.91 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014153000548959  1105332176 |
| 06/02 | 31,738.89 | IRS USATAXPYMT 270455375480357REF # 014153000574415  1105332410 |
| 06/03 | 7,507.57 | EMPLOYMENT DEVEL EDD EF 641008896 REF # 014154001761392  1104550930 |



MEMBER FDIC

0053773-0000001-0149955

EXHIBIT 1
16

## An Easy Approach To Balancing Your Account

**To reconcile your checkbook balance to your statement balance:** Mark off each entry in your check register that has been charged to your account during the statement period. List the checks you have written, but are not yet charged to your account in the "Checks Outstanding" column below. Then, follow the instructions in lines 1 through 10.

| CHECKS OUTSTANDING | |
|---|---|
| Check Number | Check Amount |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL: | |

*Transfer to Line 9.*

| CHECKBOOK BALANCE | |
|---|---|
| 1.  LIST your checkbook balance. | |
| 2.  ADD any deposits or other credits listed on the front of this statement which you have not recorded in your checkbook (such as payroll credits or other direct electronic deposits). | |
| 3.  SUBTOTAL: | |
| 4.  SUBTRACT any charges listed on the front of this statement which you have not recorded (such as service charges, automatic transfers, electronic transactions, etc). | |
| 5.  ADJUSTED CHECKBOOK BALANCE: | |

*This balance should agree with line 10, below.*

| STATEMENT BALANCE | |
|---|---|
| 6.  LIST your current statement balance as shown on the front of this statement. | |
| 7.  ADD deposits made, but not shown on this statement. | |
| 8.  SUBTOTAL: | |
| 9.  SUBTRACT total from "Checks Outstanding." | |
| 10.  ADJUSTED STATEMENT BALANCE: | |

*This balance should agree with line 5, above.*

**PROMPTLY EXAMINE YOUR STATEMENT AND REPORT ANY PROBLEM**
You must promptly examine your account statements and report any discoverable errors, unauthorized signatures, alterations, missing endorsements, or unauthorized transfers. Failure to do so may result in your loss of certain rights or remedies. For example, you must identify the discoverable alteration or forgery of a check within 30 days of us sending you, or making available to you, the statement reflecting that check, and you must also immediately report to us what you find. Businesses should check their account transactions daily, for which various online services are available. For additional information, please see your deposit account agreement and application service agreement(s) for details. See also the consumer disclosures below.

**CONSUMER ACCOUNTS: IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS OR MONEY RESERVE TRANSACTIONS**
If you think your statement is wrong, or if you need more information about a transfer on this statement or on a receipt, please telephone or write us. Please use the telephone number or address listed on the front of this statement to contact us as you can. **We must hear from you no later than 60 days after we sent or made available the FIRST statement on which the problem or error appeared. The provisions in this paragraph do not apply to business or other non-personal accounts. The owners of those accounts must settle all unauthorized transactions or errors within 24 hours of receipt of the item posting in order to be returned.**

1.  Tell us your name and account number.
2.  Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3.  Tell us the dollar amount of the suspected error.

We will investigate your complaint and correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**FOR MONEY RESERVE ACCOUNTS:**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR PERSONAL CREDIT LINE**
*(This is a Summary of Your Billing Rights).*
If you think your statement is wrong, or you need more information about a transaction on your statement, write us at the address on the front of this statement as soon as possible. **We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared.**

You can telephone us but doing so will not preserve your rights. In your letter, give us the following information.

1.  Your name and account number.
2.  The dollar amount of the suspected error.
3.  Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question. You must notify us in writing. You can telephone us, but doing so will not preserve your rights. Contact us at California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

**Balance Subject to Interest Rate:** We use the method called "average daily balance", (including current transactions) to calculate the daily balance. If you have any further questions about the method and how resulting interest charges are determined, please feel free to contact us at 1-800-400-6080.

**We may report information about your Money Reserve account to credit bureaus.** Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Please notify us if we report any inaccurate information about your account(s) to a credit bureau.** Your written notice describing the specific inaccuracy should be sent to us at the following address: California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

*Thank you for banking with California Bank & Trust.*

**Become an Online Banking Customer for 24-hour account access.**

•Review account balances  •Review posted transactions  • Pay bills • Transfer funds
**Sign up today at www.calbanktrust.com or call 888-217-1265.**

0053773-0000001-0149955

EXHIBIT 1
17

# CALIFORNIA BANK
## T R U S T

P.O. Box 489, Lawndale, CA  90260-0489

Page  3 of  18
June 30, 2014
EAGAN AVENATTI LLP
3260138461

Continued ...

| Date | Amount | Description |
|---|---|---|
| 06/03 | 33,962.18 | BANKCARD CENTER PAYMENT 479859110118744REF # 014154001875121  1104501407 |
| 06/09 | 72,000.00 | WIRE/OUT-2014060900003589;BNF STEPHEN H KRUMM A PROFESSIONAL  1301401107 |
| 06/09 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/10 | 10,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000000061 2304600611 |
| 06/10 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000004742 2304600921 |
| 06/10 | 316.12 | PAYCHEX EIB INVOICE X55452000026057REF # 014160004777175  1104706243 |
| 06/10 | 54,568.24 | BANKCARD CENTER PAYMENT 479859110118744REF # 014161005448789  1104701320 |
| 06/11 | 15,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000008469 2305200551 |
| 06/12 | 54,699.48 | PAYCHEX PAYROLL 55602400002165XREF # 014162005942318  1103604440 |
| 06/13 | 2,150,000.00 | WIRE/OUT-2014061300004116;BNF ALEDMI LLC  1302002456 |
| 06/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/13 | 700,000.00 | WIRE/OUT-2014061300004062;BNF SIMEON OSBORN  1302002448 |
| 06/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/13 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002623  2305100759 |
| 06/13 | 1,866.18 | PAYCHEX TPS TAXES 55655000005490XREF # 014164007194454  1103935719 |
| 06/13 | 6,814.85 | PAYCHEX PAYROLL 55653000000213XREF # 014164007131938  1103935502 |
| 06/13 | 39,622.39 | PAYCHEX TPS TAXES 55604600012810XREF # 014163006683659  1103910764 |
| 06/16 | 354.24 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014167007718247  1106325241 |
| 06/16 | 2,721.09 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014167007718239  1106325233 |
| 06/17 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002012  2306100215 |
| 06/18 | 111,563.66 | WIRE/OUT-2014061800003041;BNF SUGARMAN & COMPANY, LLP  1302100832 |
| 06/18 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/18 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000003864  2304400347 |
| 06/19 | 10,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000007884  2304000383 |
| 06/24 | 52,957.30 | WIRE/OUT-2014062400002774;BNF ALEDMI LLC  1302400814 |
| 06/24 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/24 | 54,374.20 | BANKCARD CENTER PAYMENT 479859110118744REF # 014175001490967  1104101273 |
| 06/26 | 368,496.00 | WIRE/OUT-2014062600003549;BNF CASCADE CAPITAL GROUP  1302200968 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 158,729.00 | WIRE/OUT-2014062600003599;BNF MARK CALVERT  1302200990 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 15,640.00 | WIRE/OUT-2014062600003936;BNF CASCADE CAPITAL GROUP CASH BAL  1302201056 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 35.00 | STOP PAYMENT FEE |
| 06/27 | 20,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002452  2305501041 |
| 06/27 | 54,100.45 | PAYCHEX PAYROLL 55836900000729XREF # 014177002681592  1103508283 |
| 06/30 | 33,887.86 | PAYCHEX TPS TAXES 55842400024689XREF # 014178003367072  1103010072 |
| 06/30 | 102.00 | INSUFFICIENT FUNDS FEE-ITEM PD  1701001242 |
| 06/30 | 25.00 | REMOTE DEPOSIT SERVICE - 1 |

## 128 CHECKS PROCESSED

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 9112 | 06/05 | 389,393.30 | 9659 | 06/02 | 71.75 | 9710* | 06/02 | 10,000.00 |
| 9599* | 06/04 | 6,084.51 | 9661* | 06/03 | 3,046.65 | 9711 | 06/02 | 25,000.00 |
| 9602* | 06/25 | 2,102.00 | 9663* | 06/02 | 33,734.27 | 9715* | 06/06 | 883.59 |
| 9603 | 06/24 | 9,713.30 | 9664 | 06/03 | 10,922.66 | 9716 | 06/04 | 290.56 |
| 9604 | 06/27 | 792.98 | 9666* | 06/10 | 26,962.39 | 9717 | 06/16 | 100.17 |
| 9625* | 06/12 | 517.36 | 9668* | 06/02 | 4,022.79 | 9718 | 06/18 | 87.92 |
| 9628* | 06/16 | 10,383.00 | 9669 | 06/02 | 319.75 | 9719 | 06/18 | 246.07 |
| 9629 | 06/16 | 55,242.97 | 9672* | 06/04 | 7,150.15 | 9720 | 06/18 | 765.00 |
| 9630 | 06/16 | 150,000.00 | 9674* | 06/04 | 2,919.41 | 9721 | 06/25 | 201.48 |
| 9631 | 06/24 | 387.00 | 9675 | 06/05 | 2,333.50 | 9722 | 06/12 | 152.90 |
| 9641* | 06/02 | 230.34 | 9676 | 06/06 | 3,500.00 | 9723 | 06/13 | 375.00 |
| 9642 | 06/03 | 10,951.86 | 9679* | 06/16 | 16,613.09 | 9724 | 06/18 | 477.20 |
| 9644* | 06/02 | 92.07 | 9684* | 06/10 | 4,039.16 | 9725 | 06/13 | 159.00 |
| 9645 | 06/03 | 341.57 | 9686* | 06/02 | 2,500.00 | 9726 | 06/16 | 220.00 |
| 9646 | 06/03 | 7,531.20 | 9687 | 06/02 | 14,275.47 | 9727 | 06/13 | 2,871.04 |
| 9648* | 06/13 | 13,536.25 | 9689* | 06/02 | 1,599.85 | 9728 | 06/13 | 839.74 |
| 9649 | 06/09 | 6,079.16 | 9690 | 06/03 | 38.99 | 9729 | 06/16 | 6,899.28 |
| 9651* | 06/05 | 3,573.91 | 9691 | 06/02 | 1,652.78 | 9730 | 06/13 | 2,317.83 |
| 9652 | 06/02 | 144.00 | 9692 | 06/04 | 16,508.89 | 9731 | 06/18 | 107.00 |
| 9653 | 06/09 | 30,672.55 | 9693 | 06/02 | 14,035.00 | 9732 | 06/13 | 8.85 |
| 9654 | 06/02 | 1,325.00 | 9701* | 06/04 | 2,551.08 | 9733 | 06/13 | 3,211.65 |
| 9655 | 06/02 | 5,814.15 | 9702 | 06/04 | 97.28 | 9734 | 06/12 | 390.00 |
| 9656 | 06/03 | 2,687.50 | 9703 | 06/16 | 500.00 | 9735 | 06/16 | 1,163.50 |
| 9657 | 06/05 | 35,888.50 | 9704 | 06/02 | 15,160.00 | 9736 | 06/11 | 10,675.46 |
| 9658 | 06/02 | 7,736.90 | 9705 | 06/03 | 4,762.43 | 9737 | 06/13 | 3,713.58 |



MEMBER FDIC

EXHIBIT 1
18

0053773-0000002-0149956

Page 4 of 18
June 30, 2014
EAGAN AVENATTI LLP
3260138461
California Bank & Trust

Continued ...

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|
| 9739* | 06/12 | 2,103.90 | 9757 | 06/27 | 231.86 | 9781 | 06/27 | 117.70 |
| 9740 | 06/13 | 1,840.67 | 9758 | 06/30 | 86.35 | 9782 | 06/27 | 413.97 |
| 9741 | 06/13 | 2,614.85 | 9759 | 06/30 | 54.86 | 9786* | 06/26 | 440.12 |
| 9743* | 06/16 | 400.00 | 9760 | 06/26 | 36,908.68 | 9788* | 06/27 | 350,000.00 |
| 9744 | 06/12 | 1,318.48 | 9761 | 06/27 | 1,091.74 | 9789 | 06/27 | 1,600.87 |
| 9745 | 06/12 | 987.85 | 9762 | 06/30 | 122.05 | 51537* | 06/03 | 3,865.99 |
| 9746 | 06/12 | 176.55 | 9764* | 06/27 | 700.00 | 51539* | 06/02 | 5,120.35 |
| 9747 | 06/13 | 2,665.75 | 9765 | 06/30 | 1,875.00 | 51540 | 06/02 | 1,162.69 |
| 9748 | 06/19 | 300.00 | 9767* | 06/26 | 2,843.95 | 51541 | 06/04 | 5,648.27 |
| 9749 | 06/13 | 634.00 | 9768 | 06/30 | 12,308.98 | 51543* | 06/03 | 1,614.65 |
| 9750 | 06/17 | 22,155.00 | 9770* | 06/27 | 639.50 | 51546* | 06/02 | 8,556.22 |
| 9751 | 06/20 | 18.00 | 9771 | 06/30 | 502.05 | 51547 | 06/11 | 7,636.38 |
| 9752 | 06/16 | 1,966.59 | 9772 | 06/26 | 59.00 | 51548 | 06/02 | 5,718.48 |
| 9752* | 06/16 | 2,262.00 | 9773 | 06/30 | 3,230.01 | 51549 | 06/02 | 852.35 |
| 9753 | 06/17 | 4,756.25 | 9777* | 06/30 | 14,293.18 | 51550 | 06/03 | 175.00 |
| 9754 | 06/17 | 282.14 | 9778 | 06/30 | 1,070.30 | 51551 | 06/02 | 3,359.90 |
| 9755 | 06/26 | 4,415.80 | 9779 | 06/30 | 53.51 | 51553* | 06/27 | 175.00 |
| 9756 | 06/27 | 1,397.49 | 9780 | 06/26 | 987.85 | | | |

* Not in check sequence

..................................................................................................................

**AGGREGATE OVERDRAFT AND RETURNED ITEM FEES**

| | Total for This Period | Total Year-to-Date |
|--------|------|--------|
| Total Overdraft Fees | $102.00 | $1,486.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

To learn more about our other products and services that may lower the cost of managing account overdrafts or to discuss removing overdraft coverage from your account, please contact Customer Service or visit your local branch.

..................................................................................................................

**DAILY BALANCES**

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 06/02 | 1,153,185.43 | 06/11 | 353,803.22 | 06/20 | 145,690.90 |
| 06/03 | 1,065,777.18 | 06/12 | 293,210.63 | 06/24 | 28,229.10 |
| 06/04 | 1,024,527.03 | 06/13 | 355,067.85 | 06/25 | 25,925.62 |
| 06/05 | 593,337.82 | 06/16 | 106,134.92 | 06/26 | 334,050.21 |
| 06/06 | 588,954.23 | 06/17 | 73,941.53 | 06/27 | -97,211.35 |
| 06/09 | 488,000.97 | 06/18 | 156,008.90 | 06/30 | 40,161.87 |
| 06/10 | 387,115.06 | 06/19 | 145,708.90 | | |

EQUAL HOUSING LENDER    MEMBER FDIC

0053773-0000002-01499956

EXHIBIT 1
19

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**LANDAU LAW LLP, 1880 Century Park East, Suite 1101, Los Angeles, CA 90067.**

A true and correct copy of the foregoing document entitled (*specify*): ***Second Amended Complaint for Avoidance and Recovery of Voidable Transfers*** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **July 21, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Lei Lei Wang Ekvall    lekvall@swelawfirm.com,**
  **lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com**
- **Richard A Marshack (TR)    pkraus@marshackhays.com,**
  **rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com**
- **Jack A. Reitman    jareitman@landaufirm.com,**
  **srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com**
- **Michael Simon    msimon@swelawfirm.com,**
  **lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 21, 2020 | Vanessah Richmond | /s/ Vanessah Richmond |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.