

FILED & ENTERED

DEC 22 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Eagen Avenatti, LLP,<br><br><br><br><br>Debtor(s). | Case No.:  8:19-bk-13560-SC<br><br>CHAPTER 7<br><br>Adv No:   8:20-ap-01049-SC<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        December 2, 2021<br>Time:        11:00 AM<br>Courtroom:  5C |
| Richard A Marshack, Chapter 7 Trustee,<br><br>Plaintiff(s),<br><br>v.<br><br>Aledmi, LLC, an administratively dissolved Washington Limited Liability company; Alan Chafee, as successor in interest to Aledmi, LLC; Edwin Spaunhurst, as successor in interest to Aledmi, LLC; Michael White, as successor in interest to Aledmi, LLC,<br><br><br>Defendant(s). | |

On December 2, 2021, the Court held a hearing on the motion for summary judgment filed by defendants, Aledmi, LLC, an administratively dissolved Washington Limited Liability company ("Aledmi") [1], Alan Chafee, as successor in interest to Aledmi, LLC, Edwin Spaunhurst, as successor in interest to Aledmi, LLC, and Michael White, as successor in interest to Aledmi, LLC (collectively, "Defendants") on September 23, 2021 [Dk. 91] (the "Motion").

Having considered all pleadings filed in connection with the Motion, the arguments of counsel at the hearing, and for the reasons more fully explained below, the Court finds good cause to GRANT the Motion.

## I.    Prefatory Statement

This is an unusual case. Here, despite the debtor having received and utilized loaned funds to settle a separate debt, and then having actually repaid those loaned funds back to the lender, the chapter 7 Trustee seeks to claw back the repayment, asserting it was an actual fraudulent transfer because the underlying loan agreement was between the lender and an entity other than the debtor.

In his complaint, Richard A Marshack, Chapter 7 Trustee (the "Trustee") of the estate of Eagan Avenatti, LLP ("Debtor"), seeks to avoid, recover, and preserve two alleged "actual fraudulent transfers" made by Debtor to Defendants. In the Motion, Defendants seek summary judgment on all of the Trustee's claims, arguing that the undisputed facts demonstrate that the transfers at issue were made by Debtor without actual intent to hinder, delay, or defraud creditors, and Debtor received reasonably equivalent value for the transfers, so the Trustee cannot satisfy the requisite statutory elements underlying his claims. Defendants further, and alternatively, assert that even if the Trustee could meet his burden to show that the transfers are actual fraudulent transfers under the statute, the undisputed evidence demonstrates that Defendants are good faith transferees, entitling Defendants to a complete defense to the claims

---

[1] Aledmi was administratively dissolved as of December 1, 2016. Trustee's Statement of Disputed Facts, Dk. 120, No. 81.

asserted. For the reasons more fully explained below, the Court agrees with Defendants' assertions.

## II.    Factual Background[2]

### a.  Loan by Aledmi to Global Baristas

At all relevant times, Michael Avenatti was the majority owner and manager of Debtor and Global Baristas – two separate entities. Trustee's Statement of Disputed Facts filed November 12, 2021 ("Trustee's SODF"), Dk. 120, No. 1 and 9.[3] Aledmi, a separate entity which was not under the control of Mr. Avenatti, was formed on July 8, 2013, for the purpose of making a short-term loan to Global Baristas. Trustee's SODF, Dk. 120, Nos. 2, 7, and 12.[4]

Days after its formation, on January 13, 2013, Aledmi executed an agreement with Global Baristas whereby Aledmi would give money to Global Baristas in exchange for future repayment of the loan with interest. Trustee's SODF, Dk. 120, No. 7. Debtor was not a party to the agreement. *Id*. In addition to the promise of repayment, Global Baristas granted Aledmi a security interest in certain property it owned, and Michael Avenatti executed a personal guarantee which was secured by a lien on Mr. Avenatti's home. Trustee's SODF, Dk. 120, Nos. 15 – 17. Aledmi caused a UCC-1 financing statement in connection with the loan to be recorded. Trustee's SODF, Dk. 120, No. 19.

---

[2] Exhibit A to this decision contains a visual description of key facts and was created by the Court in order to augment and ensure understanding of the material facts at issue.

[3] The Trustee admits that Mr. Avenatti was a majority owner of Global Baristas and a manager and majority owner of Debtor. The Trustee does not specifically dispute that Mr. Avenatti was not a manager of Global Baristas; instead the Trustee asserts that Mr. Avenatti was not the *sole* manager of Global Baristas. The difference is immaterial to this decision.

[4] The Trustee admits these facts. While the Trustee attempts to make an argument that Yardarm Knot. Inc. is the stated provider of the funds, and not Aledmi itself, the assertion is counterfactual. The wire transfer clearly indicates that Aledmi is the originator of the transfer, and no evidence to the contrary exists. Defendants' Exhibits filed September 23, 2021, Dk. 94, Ex. 16. Further, Defendants have provided unrefuted evidence that one of the Defendants, a former member of Aledmi and a current officer of Yardarm Knot, Inc., caused the transfer on behalf of Aledmi to the Foster Pepper account in connection with the loan and not for any other purpose. Supplemental Declaration of Alen Chafee filed November 18, 2021, Dk. 123, Pg. 2:2-16. The Trustee did not object to this evidence, either in writing or orally at the hearing. Accordingly, the Trustee's dispute is a distinction without a difference and not a genuine issue of material fact.

On or around July 11, 2013, loan proceeds in the amount of approximately $1.8 million were wired to a trust account at Foster Pepper, PLLC ("Foster Pepper"), as directed by Global Baristas' counsel. Trustee's SODF, Dk. 120, Nos. 20 and 21. The funds were held in the Foster Pepper trust account for the benefit of Global Baristas. Defendants' Exhibits filed September 23, 2021, Dk. 94, Exhibit 18.  Later that day, unbeknownst to Defendants, the loan proceeds were transferred from the Foster Pepper trust account to an account held by Debtor. Trustee's SODF, Dk. 120, Nos. 23 and 24. As stated above, Mr. Avenatti was the manager of both Debtor and Global Baristas. Trustee's SODF, Dk. 120, No. 1 and 9. That same day, on July 11, 2013, Debtor wired approximately $1.8 million to Koss Corporation in payment of a debt owed by Debtor and unrelated to Global Baristas. Trustee's SODF, Dk. 120, No. 28.

### b.  Global Baristas Defaults on the Aledmi Loan

The original maturity date of the loan was December 30, 2013. Trustee's SODF, Dk. 120, No. 10. Despite extending the maturity date of the loan to June 1, 2014, Global Baristas defaulted on the loan, triggering the accrual of high default interest, which concerned Mr. Avenatti who didn't want to be "nickled and dimed." Trustee's SODF, Dk. 120, Nos. 29, 30, 52, and 66; Defendants' Exhibits filed September 23, 2021, Dk. 94, Ex. 30.

### c.  Debtor's Transfers to Aledmi

On June 13, 2014, Debtor wired $2,150,000.00 to Aledmi, and on June 24, 2014, Debtor wired another $52,957.30 to Aledmi (together, the "Transfers"), which amounts settled the loan. Trustee's SODF, Dk. 120, Nos. 53 and 54. By June 27, 2014 (three days after the final wire transfer from Debtor), Aledmi caused a termination of the UCC-1 financing statement to be recorded and released its liens against the collateral property. Trustee's SODF Dk. 120, No. 78 and 79.

### d.  Debtor files Bankruptcy and the Trustee initiates an Adversary Proceeding against Aledmi

On September 13, 2019, Debtor's chapter 7 bankruptcy case was filed.

1  Thereafter, the Trustee was appointed. On April 14, 2020, the Trustee caused his

2  complaint[5] against Defendants to be filed, commencing this adversary proceeding. On

3  June 30, 2020, the Court entered an order granting in part and denying in part

4  Defendant's motion to dismiss the complaint. Dk. 16. On July 21, 2020, the Trustee

5  amended his complaint, to which Defendants timely filed an answer. Dks. 19 and 30.

6  After holding a status conference where both parties were represented, the Court

7  issued its scheduling order, setting deadlines for discovery and non-discovery motions

8  to be heard and resolved, which deadlines were extended by stipulation of the parties

9  on several occasions. Dks. 35, 39, 42.

10                    **e.  Motion for Summary Judgment**

11       On September 23, 2021, Defendants filed their timely Motion, as well as the

12  following relevant documents in support: Defendant's Proposed Statement of

13  Uncontroverted Facts [Dk. 92], Supplemental Index of Exhibits [Dk. 94], and the

14  Declarations of Howard Grobstein, Michael Simon, Michael White, Alan Chafee, and

15  Edwin Spaunhurst [Dks. 95-99, respectively]. Defendants set a hearing on the Motion

16  for November 4, 2021, at 11:00 a.m.[6]

17       On October 13, 2021, the Trustee filed a motion seeking to continue the

18  November 4, 2021, hearing and extend responsive pleading deadlines for reasons

19  asserted in the motion to continue. Dk. 110. The motion to continue was granted on

20  October 14, 2021, and the hearing was continued to December 2, 2021, at 11:00 a.m.

21  Dk. 111. No other motions to stay discovery, or of the adversary proceeding, itself, were

22  filed by the Trustee or any other party at that time, or since.[7]

23  ───────────────────────

24  [5] The Trustee's original complaint was amended on April 15, 2020, prior to the issuance of a summons.
Dks. 2 and 3. The proof of service filed April 16, 2020, reflects that the Trustee caused the first amended
complaint dated April 15, 2020, to be served on Defendants, along with the summons. Dk. 4.

25  [6] On September 24, 2021, Defendants filed a notice of errata correcting the location of the hearing from
Courtroom 5D to Courtroom 5C.

26  [7] In an early hearing related to a separate adversary proceeding associated with this Debtor, the Court
and the Trustee's special counsel discussed the possibility that the Department of Justice may file a

27  motion to stay the adversary and delay discovery due to Mr. Avenatti's then-pending criminal trial. Case
No. 8:19-bk-13560, Dk. 298. *See also* Status Report filed June 11, 2021, Adversary No. 8:20-ap-01086,

28  Dk. 219, Pg. 5 ("It is anticipated that discovery will take longer than is customary in adversary

On November 11, 2021, the Trustee filed his opposition to the Motion [Dk. 113], together with the Declarations of Jason M. Frank, Brian Weiss, and John P. Reitman [Dks. 114-116, respectively], Evidentiary Objections [Dk. 117],[8] Supplemental Exhibits [Dk. 118], and the Declaration of Monica Rieder [Dk. 119]. On November 12, 2021, the Trustee filed his Statement of Disputed Facts. Dk. 120.

On November 18, 2021, Defendants filed their Reply, Supplemental Declarations of Michael Simon and Alan Chafee [Dks. 122-123, respectively], a reply to the Trustee's evidentiary objections [Dk. 124], and evidentiary objections to the Declarations of Jason Frank [Dk. 125], and Monica Reider [Dk. 126].

On November 23, 2021 [Dk. 128], the Trustee filed a Supplemental Declaration of Monica Reider and a Notice of Erratum to his opposition [Dk. 129], which clarified certain arguments that the Trustee had incorrectly asserted in his opposition regarding the net balance of transfers between Debtor and Global Baristas.

As noted above, the Court held a hearing on the Motion on December 2, 2021, and took the matter under submission. Now, the Court issues the following order, granting the Motion and resolving the adversary proceeding entirely.

### III.    Discussion

#### a.  Summary Judgment Standards

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56(a) (incorporated by Federal Rule of Bankruptcy Procedure (FRBP) 7056); *Barboza v. New Form, Inc. (In re Barboza),* 545 F.3d 702, 707 (9th Cir. 2008) (applying FRCP 56 summary judgment standards to adversary proceedings). An issue is "genuine" only if a reasonable fact

---

proceedings before this Court because of: (a) the complexity of issues in this matter; (b) the likelihood of defendants to continue filing motions; and (c) the request of the United States Attorney prosecuting the criminal action against Michael Avenatti for the Trustee to delay discovery with respect to any matters which may arise in Michael Avenatti's upcoming criminal trial currently scheduled for July 13, 2021"). No such motion was ever filed.

[8] This Court's rulings on the evidentiary objections filed by the Trustee and Defendants [Dks. 117, 125, and 126, respectively] are contained in a separate order.

finder, looking at the evidence, could find for the non-moving party, and a dispute is "material" only if it could affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Summary judgment may be used defensively where the moving party can show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[T]he plain language of Rule 56(c) *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Abromson v. Am. Pac. Corp.,* 114 F.3d 898, 902 (9th Cir. 1997).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(c), (e). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). *See also Travelers Cas. & Sur. Co. v. Washington Tr. Bank,* 86 F. Supp. 3d 1148, 1152 (E.D. Wash. 2015) ("Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial.")

**b.  The Trustee's Causes of Action are ripe for summary adjudication**

This Court has thoroughly evaluated the facts as presented by both parties and has determined that the material facts are uncontroverted such that the issues are ripe

for determination as a matter of law. The Court utilized the Trustee's Statement of Disputed Facts in its recitation of the factual background above, relying only on undisputed, genuine, and material facts, as required by law. To be clear, despite the title of the document, "Statement of Disputed Facts," the Trustee did not actually dispute the material facts relevant to this decision and utilized herein.

The Trustee's complaint alleges three claims: two of the claims seek Avoidance of Transfers under, *inter alia*, 11 U.S.C. § 544(a) and Cal. Civ. Code §3439.04(a), with a third claim for Recovery and Preservation of the Avoided Transfers. Defendants seek summary judgment on all three of these claims, arguing that the undisputed facts demonstrate that the Trustee cannot meet his burden with respect to all elements under Cal. Civ. Code § 3439.04(a) (i.e., avoidance of actual fraudulent transfer).[9] Defendants further, and in the alternative, assert that even if the Trustee could meet his burden to show that the Transfers are actual fraudulent transfers, the undisputed evidence demonstrates that Defendants are entitled to a complete defense to avoidance under Cal. Civ. Code § 3439.08 (i.e., the "good faith" defense).

Below, the Court analyzes each of Defendants' theories for relief, concluding that under each, Defendants are entitled to summary judgment in their favor as to all causes of action contained in the Trustee's complaint.

### c. Actual Fraudulent Transfer Standards

A trustee's avoidance powers are laid out discretely under 11 U.S.C. § 544, which generally provides that a trustee may avoid transfers of interest made by the debtor that are voidable by a creditor to the estate under applicable state law. 11 U.S.C. § 544(b)(1).

California's Uniform Voidable Transactions Act ("UVTA") (formerly the Uniform Fraudulent Transfer Act ("UFTA")) offers two theories under which a debtor's transfer

---

[9] The Trustee must successfully avoid the Transfers in his first and second causes of action as a prerequisite to his third and final cause of action for recovery and preservation. Where, as here, the Trustee is unsuccessful in his avoidance actions, his recovery and preservation cause action stemming therefrom necessarily fails.

may be voided: actual fraud or constructive fraud.[10]  *See* Cal. Civ. Code §§ 3439. The Trustee seeks to avoid the Transfers based on the theory that the Transfers were actual fraudulent transfers; therefore, it is the Trustee who bears the burden of proof on the § 3439.04(a) claims. *See* Cal. Civ. Code § 3439.04(c).

Pursuant to California Civil Code § 3439.04(a), "actual fraud" occurs where, *inter alia*, the transfer was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a).

Specifically, Cal. Civ. Code § 3439.04(a) states:

> (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> (1) With *actual intent* to hinder, delay, or defraud any creditor of the debtor.
>
> (2) *Without receiving a reasonably equivalent value* in exchange for the transfer or obligation, and the debtor either:
>
> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>
> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Cal. Civ. Code § 3439.04(a) (emphasis added).

When the debtor is an entity, the relevant intent is the intent of the individual(s) in control of the entity. See, e.g., *Uecker v. Ng (In re Mortg. Fund '08 LLC)*, 2013 Bankr. LEXIS 3385, at *16 (Bankr. N.D. Cal. Aug. 14, 2013). In determining whether the requisite intent existed in the mind of the individual in control of the entity, the court should consider "all of the relevant circumstances surrounding the transfer." *Ezra v.*

---

[10] The Trustee seeks to void the Transfers under the theory of actual fraud only. Accordingly, there is no discussion in the pleadings or this order regarding constructive fraud and/or its application to the facts before the Court.

1  *Seror (In re Ezra),* 537 B.R. 924, 931 (9th Cir. BAP 2015). Additionally, "the statute

2  provides that a court may consider, *inter alia*, '[w]hether the transfer or obligation was to

3  an insider; . . . [w]hether the debtor retained possession or control of the property

4  transferred after the transfer; . . . [w]hether the transfer was of substantially all the

5  debtor's assets; . . . [and w]hether the value of the consideration received by the debtor

6  was reasonably equivalent to the value of the asset transferred or the amount of the

7  obligation incurred.'" *Wimbeldon Fund, SPC (Class TT) v. Graybox, LLC*, No. 2:15-cv-

8  6633-CAS (AJWx), 2019 U.S. Dist. LEXIS 89988, at *33 (C.D. Cal. May 29, 2019)

9  (citing Cal. Civ. Code § 3439.04(b)). The foregoing are commonly described as "badges

10  of fraud."

11        As noted by the Ninth Circuit Bankruptcy Appellate Panel, the "badges of fraud"

12  contained in Cal. Civ. Code § 3439.04(b) are not exclusive, and the Court is not

13  mandated to draw an inference of fraud because any particular number of the badges

14  are present.

15

16        The UFTA list of 'badges of fraud' provides neither a counting rule, nor a
           mathematical formula. No minimum number of factors tips the scales toward
17         actual intent. A trier of fact is entitled to find actual intent based on the evidence
           in the case, even if no 'badges of fraud' are present. Conversely, specific
18         evidence may negate an inference of fraud notwithstanding the presence of a
           number of 'badges of fraud.'

19

20  *Wolkowitz v. Beverly (In re Beverly),* 374 B.R. 221, 236 (B.A.P. 9th Cir. 2007) (affirmed

21  in part and appeal dismissed in part by *Beverly v. Wolkowitz (In re Beverly),* 2008 U.S.

22  App. LEXIS 26386 (9th Cir. 2008)).

23        Proof of a legitimate business or other reason for a transfer can be considered by

24  the court to negate any alleged "badges of fraud," and defeat an intentional fraudulent

25  transfer claim, including on summary judgment. *See, e.g., In re J.R. Deans Co., Inc.*,

26  249 B.R. 121, 139 (Bankr. D.S.C. 2000) (granting summary judgment on an intentional

27  fraudulent transfer claim in favor of the defendant based on evidence that the transfers

28  were made for good business reasons, i.e., paying rent for leased premises); *In re*

*Spitko*, 2007 WL 1720242, at *14–15 (Bankr. E.D. Pa. 2007) (granting summary judgment on an intentional fraudulent transfer claim in favor of the defendant based on evidence that the transfers were to pay for legal services rendered to companies owned by the debtor); *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 382–83 (S.D.N.Y. 2003), aff'd, 99 F. App'x 274 (2d Cir. 2004) (stating that "[n]o reasonable jury could find that there was anything suspicious or questionable about the transfers here. Although the transfers were not in the ordinary course of business, there were legitimate business reasons for them."); *In re Licking River Mining, LLC*, 603 B.R. 336, 382 (Bankr. E.D. Ky. 2019), as amended (July 19, 2019) (stating that summary judgment in favor of the defendant is appropriate where defendant shows "'countervailing proof . . . that the transfer or conveyance was made fairly and without intent to defraud the creditor.'").

Whether a debtor received "reasonably equivalent value" for a transfer is both an element under the Cal. Civ. Code § 3439.04(a) avoidance statute, and a commonly considered badge of fraud. "Reasonably equivalent value is the value of the property on the date of the transfer from the perspective of the creditors." *Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1109 (9th Cir. 2010). "Courts may consider the fair market value or what would be the fairly equivalent value of the property, taking into consideration all of the specific circumstances of each case affecting the value of the asset." *Id*.

"It is well settled that 'reasonably equivalent can come from one other than the recipient of the payments, a rule which has become known as the indirect benefit rule.'" *In re N. Merch., Inc.*, 371 F.3d 1056, 1058 (9th Cir. 2004) (citing and quoting *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 485 (4th Cir. 1992)). The indirect benefit rule, and its impact on the Court's reasonably equivalent value analysis, has been further explained as follows:

It is well settled that reasonably equivalent value can come from one other than the recipient of the payments, a rule which has become known as the indirect benefit rule." *N. Merch.,* 371 F.3d at 1058 (internal quotations and citation omitted). "'If the consideration given to the third person otherwise has ultimately

landed in the debtor's hands, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved, and [the statute] has been satisfied—provided, of course, that the value of the benefit received by the debtor approximates the value of the property or obligation he has given up.'" *Id.* at 1058–59 (alteration in original) (quoting *Rubin v. Mfrs. Hanover Trust Co.,* 661 F.2d 979, 991–92 (2d Cir.1981)). If the debtor receives such reasonably equivalent value, "then the transaction has not significantly affected his estate and his creditors have no cause to complain." *Rubin,* 661 F.2d at 991.

*In re Flashcom, Inc.*, 503 B.R. 99, 117-18 (C.D. Cal. 2013), *aff'd*, 647 F.App'x 689 (9th Cir. 2016).

In fact, "[a] debtor receives reasonably equivalent value for the repayment of loan proceeds it receives whether or not it is contractually obligated to repay the loan." See *In re Jeffrey Bigelow Design Grp., Inc.,* 956 F.2d 479 (4th Cir. 1992) (cited with approval in *In re N. Merch., Inc.,* 371 F.3d 1056, 1059 (9th Cir. 2004)).

> **d. The undisputed evidence demonstrates that the Trustee cannot satisfy at least two crucial elements of the Actual Fraudulent Transfer claim, and so summary judgment is appropriately granted in Defendants' favor.**

The undisputed facts demonstrate that Defendants have met their burden to show that the Trustee cannot satisfy two elements essential to his Cal. Civ. Code § 3439.04 causes of action: (1) that the Transfers were made "without receiving reasonably equivalent value," and (2) that the Transfers were made with "actual intent to hinder, delay, or defraud any creditor of the debtor."[11] Accordingly, even after viewing the facts in a light most favorable to the Trustee, summary judgment is warranted in Defendants' favor.

### 1. Reasonably Equivalent Value

Defendants have met their burden in showing that there is no genuine issue for trial, that Debtor received "reasonably equivalent value" for the Transfers, and that the

---

[11] As the "reasonably equivalent value" and "intent" elements have not been met, the Court need not rule on the issues of whether Debtor "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Cal. Civ. Code § 3439.04(a).

Trustee cannot make a showing sufficient to establish the existence of this essential element.

Defendants have produced unrefuted evidence of the following facts. Aledmi made a $1.81 million loan to Global Baristas, putting the loan proceeds in a Foster Pepper trust account. Mr. Avenatti, who controlled both Global Baristas and Debtor at the time, transferred the entirety of the $1.81 million from the Foster Pepper trust account to Debtor's bank account and, later that same day, paid a third party $1.84 million in satisfaction of an obligation owed by Debtor to the third party. Global Baristas had no obligation to pay $1.84 million to the third party; thus, Mr. Avenatti conferred the benefit of the $1.81 million loan from Global Baristas to Debtor. When Mr. Avenatti caused the Transfers to be made from Debtor to Aledmi in satisfaction of the loan, which was accruing default interest, Debtor had already obtained "reasonably equivalent value" for the Transfers; that the benefit was conferred by Global Baristas or Mr. Avenatti, and not Aledmi directly, and that Debtor had no formal repayment obligations because Global Baristas continued to carry the obligation of repayment of the loan, are irrelevant to the analysis.

In an attempt to defeat summary judgment, the Trustee asserts that the net effect of the transfers between Global Baristas, Debtor, and Aledmi do not reflect that Debtor obtained reasonably equivalent value, but rather that Debtor suffered a net loss on a series of transactions between Debtor and Global Baristas (not related to the Aledmi loan). The basis of the Trustee's theory is that Debtor made payments to Global Baristas prior to the Transfers which exceeded the amount of the loan proceeds such that Debtor suffered a net loss. Accordingly, the Trustee asserts that Global Baristas, and not Debtor, received the reasonably equivalent value.

The Trustee's argument, however, appears to be entirely unsupported by evidence. As noted in a supplemental declaration, the Trustee's counsel admits that with respect to the evidence of transactions provided in his opposition, she "failed to distinguish between transfers to and from 'Global Baristas, LLC,' and transfers to and

1 from 'Global Baristas **US**, LLC.'" Reider Supplemental Declaration filed November 23,

2 2021, Dk. 128, Pg. 2:12-17 (emphasis added). Accordingly, as conceded by the Trustee

3 at the hearing on the Motion, the evidence presented cannot be relied upon to

4 determine whether Global Baristas or Debtor received reasonably equivalent value. In

5 his notice of errata, the Trustee admits that, due to the foregoing error, "it is unclear at

6 this stage… whether there was any material distinction between [the two Global

7 Baristas entities]" and "whether or to what extent the transfers from [Debtor] to Global

8 Baristas **US**, LLC may have been for the benefit of [Global Baristas, LLC]," as was the

9 basis of the Trustee's argument. Trustee's Notice of Errata, Dk. 129, Pg. 2:8-10.

10        The Trustee asserts that he can provide admissible evidence regarding the

11 transactions between the two Global Baristas entities and their net effect on the

12 "reasonably equivalent value" element at trial [Dk. 129; Pg. 3:11-15]. However, this

13 Court cannot conclude on the promise and supposition of the Trustee that there are

14 indeed triable issues of fact. As noted previously, the Trustee cannot avoid summary

15 judgment by relying solely on conclusory allegations which are unsupported by factual

16 data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The Trustee's mere promise of

17 future admissible evidence is insufficient, particularly where, as here, discovery is

18 closed, a continuance on this Motion was already obtained, and there is no adequate

19 showing that a genuine dispute of material facts exists beyond the Trustee's mere

20 supposition that it is so. In the absence of "specific facts showing a genuine issue for

21 trial in order to defeat the motion," Trustee has not done enough to defeat the motion.

22 *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(c), (e).

23        Having reviewed the undisputed evidence before the Court, only one conclusion

24 may be made as a matter of law; that Defendants have met their burden in showing that

25 Debtor received "reasonably equivalent value" for the Transfers, and that the Trustee

26 has not established that he can prove otherwise as to this element.

27                **2.  Actual Intent to Hinder, Delay, and Defraud**

28        In addition to asserting that Debtor received reasonably equivalent value,

Defendants likewise have met their burden to show that that Debtor did not make the Transfers with actual intent to hinder, delay, or defraud any of Debtor's alleged creditors, and that the Trustee cannot make a showing sufficient to establish this element, which is essential to his case.

Again, the undisputed evidence demonstrates that Debtor received the loan proceeds at the direction of Mr. Avenatti[12] and used them to pay third party debts unrelated to Global Baristas. The loaned funds, instead, were used to satisfy an obligation owed by Debtor.  Further, it is undisputed that the Aledmi loan matured, and began accruing high default interest which concerned Mr. Avenatti. It is also undisputed that Aledmi released all liabilities and security interests held against the loan subsequent to the Transfers. All of the foregoing reflects repayment of a loan in the normal course to avoid unnecessary accrual of interest, which is by all accounts a reasonable and non-fraudulent purpose. Debtor is the entity that actually benefitted from the loan proceeds, so it is reasonable that Debtor, and not Global Baristas, was the entity that repaid the loan.[13]

The Trustee asserts that several badges of fraud were met. However, after having reviewed each and every assertion, the Court finds that even if the Court agrees with the Trustee's assertions, which it does not, the Court must still consider the non-

---

[12] Importantly, there is no evidence that Debtor, and Debtor's creditors, were entitled to use of the loan proceeds as a matter of law.

[13] Both parties have acknowledged that Global Baristas could have sued Debtor for conversion/unjust enrichment. California recognizes "implied in law" or quasi-contractual obligations which arise by operation of law in the context of unjust enrichment or restitution. *See Munoz v. MacMillan*, 195 Cal.App.4th 648, 661 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is `quasi-contract.'"); *Unilab Corp. v. Angeles-IPA*, 244 Cal. App. 4th 622, 639 (2016) ("Unlike an implied-in-fact contract, an implied-in-law contract or quasi-contract is not based on the intention of the parties, but arises from a legal obligation that is imposed on the defendant."); *Hillco Inc. v. Stein*, 82 Cal. App. 3d 322, 327 (1978) ("A contractual obligation is consensual in origin. A quasi-contractual obligation is not. It is one imposed by equity to prevent unjust enrichment."). However, as Mr. Avenatti had control over both entities, such suit would have been unlikely and, indeed, was unnecessary, because Debtor ultimately repaid the loan from which it benefitted, causing the liabilities against Global Baristas to be released. In a phrase, Mr. Avenatti causing the payment to come from Debtor appears to have been an example of a "no harm, no foul" situation. To find otherwise, would result in a double recovery for Debtor.

fraudulent basis which underlies the Transfers. As noted above, the existence of several

badges of fraud may not be enough to demonstrate that a triable issue of fact exists.

*Wolkowitz v. Beverly (In re Beverly),* 374 B.R. 221, 236 (B.A.P. 9th Cir. 2007)

("[S]pecific evidence may negate an inference of fraud notwithstanding the presence of

a number of 'badges of fraud.'"). Having looked at the totality of the circumstances

surrounding the Transfers, the Court must conclude that Defendants have met their

burden to show that the Trustee cannot make a showing sufficient to establish that a

triable issue of facts exists as to whether Debtor made the Transfers with the actual

intent to defraud, hinder, or delay payment to creditors and so cannot prove the

requisite intent element under Cal. Civ. Code § 3439.04(a).

Lastly, of note by the Court are the following rather "buried in the papers" facts,

which remain, in this Court's view, unchallenged by any of the Trustee's arguments or

evidence[14], and which destroy the Trustee's theory of the case:

> 127. Between the Debtor's receipt of the Loan Proceeds, the Debtor's use of the
> Loan Proceeds to pay Koss Corporation, and the elimination of liability to Aledmi
> and Global Baristas, the Debtor, the estate, and its creditors were not left in a
> worse position due to the Initial Transfers. Grobstein Declaration at Paragraph
> 17.

> 128. Because the Debtor was not the intended recipient of the Loan Proceeds, if
> the Trustee were to prevail and clawed back the Initial Transfers, the Debtor
> would realize a windfall in that it would "double-dip" in the loan proceeds.
> Grobstein Declaration at Paragraph 18.

Trustee's Disputed Facts, Dk. 120, Nos. 127 and 128. Thus, the Trustee did not dispute

that repayment of the Transfers did not leave the estate in a worse position, and that

recovery of the Transfers would result in a windfall to the estate.

Having reviewed the entirety of the pleadings, and even after drawing all

justifiable inferences in the Trustee's favor, this Court concludes that a ruling in favor of

---

[14] While the Trustee asserts that these facts are disputed, the basis for his dispute is conclusory and not well-taken. As noted above, the Trustee cannot avoid summary judgment by relying solely on conclusory allegations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

the Trustee on this cause of action would result in a windfall to the estate, which is

unacceptable and inequitable, and is demonstrable evidence that no actual fraudulent

transfer existed. Accordingly, and in the absence of a showing that genuinely disputed

material facts exist, this Court GRANTS the Motion and enters summary judgment in

Defendants' favor as a matter of law.

### e. Defendant's Alternative Argument that a complete Defense Exists is likewise well-taken

Pursuant to the above, Defendants are entitled to summary adjudication.

Alternatively, Defendants assert that even if the Trustee could demonstrate that genuine

issues of  material fact exists as to the requisite elements, which he cannot as

demonstrated above, Defendants are still entitled to summary judgment because a

complete defense to the avoidance action exists on these facts and circumstances. This

Court agrees, and grants summary judgment on this alternative basis as well.

### f. Good Faith Defense Standards

Defendants assert they are good faith transferees. There exists a complete

defense to the avoidance of actual fraudulent transfers for good faith transferees. "A

transfer or obligation is not voidable under paragraph (1) of subdivision (a) of Section

3439.04, against a person that took in good faith and for a reasonably equivalent value

given the debtor or against any subsequent transferee or obligee." Cal. Civ. Code §

3439.08. *See also Annod Corp. v. Hamilton & Samuels*, 100 Cal.App.4th 1286, 1302

(2002) ("In their motions for summary judgment, the partners established a complete

defense by showing the transfers were made in good faith and for reasonably

equivalent value. In other words, they presented evidence that would require the trial

court not to find fraudulent intent more likely than not. [Plaintiff] failed to demonstrate the

existence of a triable issue of material fact as to the partners' defense. Consequently,

the trial court properly granted summary judgment.")

"[A] transferee cannot benefit from the good faith defense if that transferee had

fraudulent intent, colluded with a person who was engaged in the fraudulent

conveyance, actively participated in the fraudulent conveyance, or had *actual knowledge of facts showing knowledge of the transferor's fraudulent intent*." *Nautilus, Inc. v. Yang*, 11 Cal. App. 5th 33, 37 (2017) (emphasis in original) (where the Court concluded that the arguable badges of fraud relied upon by Plaintiff appeared "normal, not fraudulent, for reverse mortgage lending.").

> **g. The undisputed evidence further demonstrates that even if the Transfers satisfy the elements for Avoidance of Actual Fraudulent Transfers, Defendants are still entitled to a complete "good faith" defense, warranting summary judgment in Defendants' favor.**

Pursuant to the standards articulated above, even if  the Trustee could demonstrate that genuine issues of material fact exists as to the elements of the avoidance of actual fraudulent transfer causes of action, Defendants still possess a complete defense.  The undisputed facts demonstrate that Debtor received the loan proceeds and used the loan proceeds to pay off Debtor's own debts; therefore, Debtor necessarily received reasonably equivalent value for the Transfers. Additionally, there is no evidence that a factual dispute exists as to Defendants' own fraudulent intention. Lastly, as explained more fully below, there is no evidence that Defendants, colluded with, actively participated in any alleged fraud, or had actual knowledge of Debtor's fraudulent intention at the time of the Transfers.

While the Trustee alleges that Defendants should have had actual knowledge of Debtor's fraud at the time of the repayment, he fails to provide any evidence from which the Court could infer such knowledge; instead, the Trustee provides mere assertions, which do not demonstrate that a genuine issue of material fact exists. As discussed at the hearing, inquiry notice is not the standard. The Trustee must show that Defendants "had fraudulent intent, colluded with a person who was engaged in the fraudulent conveyance, actively participated in the fraudulent conveyance, or had *actual knowledge of facts showing knowledge of the transferor's fraudulent intent*." *Nautilus*, 11 Cal. App. 5th at 37 (emphasis in original). The Trustee's argument that Defendants

should have suspected that the conveyance was fraudulent does not satisfy the above standard. Further, the Trustee has not offered any legal authority or evidence to support his argument.

Even under the circumstances the Trustee highlights in his opposition (i.e., (1) the loan was made to the newly formed Global Baristas, (2) one of the members of Global Baristas filed suit against Mr. Avenatti for alleged misconduct related at least in part to the Aledmi loan itself, and such litigation was publicized due to the fame of the plaintiff member, (3) the repayment of the Aledmi loan came after multiple extensions and was paid from Debtor's bank account and not a Global Barista's account, etc.),[15] those circumstances are not evidence which demonstrate that a dispute exists as to whether Defendants had "actual knowledge" of that the repayment was a fraudulent act of Debtor.

On its face, from Defendants' perspective, the repayment of a high interest bearing loan that is in default is consistent with a legitimate business reason for the Transfers. Therefore, after drawing all justifiable inferences in the Trustee's favor, this Court concludes Defendants would be entitled to a good faith defense even if the Transfers met the elements of Cal. Civ. Code § 3439.04(a) above (which they do not), and so concludes that the Motion may be GRANTED and summary judgment entered for Defendants on those alternative grounds as well.

## IV.    Conclusion

Having considered all pleadings, the arguments of counsel, and for the reasons more fully explained herein, the Court finds good cause to GRANT the Motion and enter judgment in Defendants' favor on each cause of action contained in the Trustee's complaint. As Defendants' counsel pointed out at the hearing on the Motion, this is not a complicated or convoluted case; Debtor received the benefit of the loan, used the loan

---

[15] Further, the Trustee's argument that Defendants should have rejected the Transfers because they originated from Debtor and not Global Baristas itself is entirely unsupported. The Trustee has provided no legal authority to demonstrate that Defendants had any legal obligation to do so under these circumstances. The Court has found none either.

1    proceeds to satisfy its own debt obligation, and not one owed by Global Baristas, and

2    then repaid the loan. There was not an actual fraudulent transfer, and even if there was,

3    Defendants have a complete defense. Further, despite *saying* that he disputes several

4    facts, the Trustee has provided no evidence demonstrating that an actual dispute of a

5    material facts exists. Thus, summary judgment is warranted.

6         Within seven days from entry of this order, Aledmi is to lodge a judgment, and file

7    a Notice of Lodgment, consistent with this order.

8         IT IS SO ORDERED

Date: December 22, 2021

Scott C. Clarkson
United States Bankruptcy Judge

**Exhibit A – Visual Description**

